UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STONEY'S SERVICE CORP., INC.,<br>Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 07-CV-2817 |
| R&R MARINE, INC., ET AL.,<br>Defendants. | § § § § § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant NIBCO, Inc.'s ("NIBCO") Motion for Summary

Judgment. (Doc. No. 34.) After considering the parties' filings and the applicable law, the

Court finds that the Motion should be granted in part and denied in part.

## I. BACKGROUND

The undisputed facts in this case are as follows. In 2005, Plaintiff Stoney's

Service Corp., Inc., contracted with a shipyard, MBLH Marine, LLC, [1] d/b/a Vessel

Repair, to convert a liquid cargo barge, the *Marine Clean I*, into a gas-freeing barge.

Third-Party Defendant Jerry Gaspard designed the gas free system and the related piping

and chose a three-inch butterfly valve ("the Valve"), manufactured by NIBCO, Inc.

("NIBCO"), for the conversion. Vessel Repair purchased and installed piping and

numerous valves. It installed the Valve in the barge's main transfer line between the

cleaning system's scrubber tank and the deep well pump. The *Marine Clean I* was then

put into service.

---

[1] MLBH Marine, LLC, was terminated from this case and is no longer a Defendant. (Doc. No. 33.)

In the summer of 2007, R&R Marine Maintenance ("R&R") repaired *Marine Clean I*'s deep well pump while it was docked in or near Port Arthur.[2] On July 11, 2007, R&R employees attempted to test the deep well pump. It did not work, and the employees shut off the pump and left the area. Sometime thereafter, oily water leaked onto the *Marine Clean I*'s deck, into the waters of the Gulf Intracoastal Waterway. In addition, although the Valve was closed, fuel oil flowed from the cleaning system's scrubber tank, through the main transfer line, deep well pump, and main header, into the *Marine Clean I*'s six clean water cargo tanks, contaminating them and their contents. Both Plaintiff and Defendant's experts have examined the Valve to determine the cause of the leaks.

Plaintiff alleges that R&R Marine Maintenance's negligence caused the leak onto the deck, and a product defect in the Valve caused that leak and the contamination of the clean water tanks. Plaintiff brought suit against MBLH Marine, LLC, R&R, and NIBCO, the manufacturer of the Valve. Plaintiff alleges negligence, negligent design, manufacture, and marketing of a product, strict products liability, breach of contract, breach of implied warranties of fitness and merchantability, and breach of express warranty. Plaintiff seeks damages in the amount of $331,000, the alleged cost to clean the six cargo tanks.

Plaintiff is a Louisiana corporation with its principal place of business in Lake Charles, Louisiana. Defendant NIBCO, Inc., is an Indiana corporation with its principal place of business in Elkhart, Indiana. The Third-Party Defendants, Jerry Gaspard and Marine Engineering Consultants, are residents of Texas.

---

[2] R&R was terminated from the case and is no longer a Defendant. (Doc. No. 44.)

## II. JURISDICTION

The case was initially before the Court pursuant to its admiralty jurisdiction based on a maritime claim arising out of a contract to repair a vessel. (Doc. No. 25); *See Ham Marine, Inc. v. Dresser Industries, Inc.*, 72 F.3d 454, 459 (5th Cir. 1995) (citing *Todd Shipyards Corp. v. Turbine Serv. Inc.*, 674 F.2d 401, 412 (5th Cir.), *cert. denied*, 459 U.S. 1036 (1982)); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (applying admiralty law to breach of an oral contract for the repair of a vessel). This alleged contract, however, only involved Defendants that are now terminated from the case, and it is not clear that any maritime claims remain. The trial date is in the near future, however, and the parties have jointly asked the Court to retain jurisdiction of the case. This Court now retains jurisdiction in admiralty, under 28 U.S.C. § 1333, pursuant to its discretionary authority to retain supplemental jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that a court may retain jurisdiction for discretionary reasons including judicial economy, and convenience and fairness to the litigants); *Employers Ins. of Wasau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752 (5th Cir. 1989) (retaining admiralty jurisdiction over the pendent contract claims even though the maritime claim was no longer viable). In the alternative, as the parties are completely diverse, the Court has jurisdiction subject to 28 U.S.C. § 1332.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).   A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).   The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.   *Crawford*, 234 F.3d at 902.   "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 130, 150-51 (2000) (quoting *Anderson*, 477 U.S. at 250-51).

## IV. INDIVIDUAL CLAIMS

Plaintiff did not respond to any of the arguments in NIBCO's Motion for Summary Judgment except those surrounding Plaintiff's claim of a manufacturing defect. (Doc. No. 39.) The failure to respond to a motion for summary judgment does not entitle the movant to summary judgment if the movant has failed to demonstrate that no issues of material fact remain. *See, e.g., John v. State of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698, 708 (5th Cir. 1985). Thus, each of Defendant's contentions regarding Plaintiff's claims will be evaluated under Texas law. As noted below, maritime law and Texas law draw from the same sources with respect to the product defect claims.

## A. Negligence

At common law, a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *McLennan v. Am. Eurocopter Corp.,* 245 F.3d 403, 431 (5th Cir. 2001) (applying Texas law). A prerequisite to tort liability is the existence of a legally cognizable duty. *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993). A duty may arise when a party "undertakes to provide services to another, either gratuitously or for compensation." *See McLennan v. American Eurocopter Corp., Inc.,* 245 F.3d 403, 432 (5th Cir. 2001) (quoting *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 837 (Tex. 2000)). Here, Plaintiff has provided no evidence that Defendant NIBCO undertook to provide services for it or that a duty arose in any other manner. NIBCO manufactured the Valve, a separate party chose the Valve, and yet another installed it on the cleaning barge.

Plaintiff argues that *res ipsa loquitor* applies to its negligence claim. If *res ipsa loquitor* is appropriate, a Court may infer negligence, but the plaintiff still must prove duty, breach, and damages. *Schorlemer v. Reyes,* 974 S.W.2d 141, 146 (Tex.App.—San Antonio 1998, pet. denied). As Plaintiff has provided no evidence of a duty, NIBCO's Motion is granted as to this claim.

## B. Breach of Contract

Plaintiff has provided no competent evidence of an enforceable contract with NIBCO, implied-in-fact or otherwise,[3] giving rise to the relief it seeks. Plaintiff has failed to raise a material issue of fact with regard to its breach of contract claim.

## C. Breach of the Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." TEX. BUS. & COM. CODE § 2.315. The particular purpose must differ from ordinary use; a warranty for ordinary use is covered under the warranty of merchantability. *See ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 121-122 (Tex.App.—El Paso1996, no writ). Plaintiff does not provide evidence that NIBCO knew of its particular purpose for the Valve. In fact, third party Individual Defendant Jerry Gaspard chose the Valve for use on the barge. Plaintiff has not demonstrated that there is an issue of material fact with respect to its claim of an Implied Warranty of Fitness for a Particular Purpose sufficient to defeat NIBCO's Motion for Summary Judgment. Again, NIBCO's Motion is granted as to this claim.

## D. Breach of Express Warranty

The elements of a breach of an express warranty are "an express affirmation of fact or promise by the seller relating to the goods that is part of the basis of the bargain on

---

[3] The elements of an implied-in-fact contract are identical to those of an express contract, though in an implied contract "the assent element must be inferred from the circumstances of the transaction." *University Nat. Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *see also* 1 WILLISTON ON CONTRACTS § 1:5 (4th ed.) ("[A]n implied-in-fact contract arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. An express contract is a contract the terms of which are stated by the parties; an implied contract is a contract the terms of which are not explicitly stated.").

which the plaintiff relied, goods that fail to comply with the affirmations of fact or promise, and injuries proximately caused by that failure." *Great Am. Prods. v. Permabond Int'l,* 94 S.W.3d 675, 681 (Tex.App.—Austin 2002, pet. denied).

Plaintiff provides no evidence that NIBCO made any representations that a particular fact represented the basis of the bargain. (Pl. 2nd Am. Compl. ¶¶ 9, 18, 19) (providing only conclusory allegations of NIBCO and former Defendants' express warranties). In the attachments provided to its Motion for Summary Judgment NIBCO provides the Limited Warranty attached to its catalog of butterfly valves, including the Valve. (Doc. No. 34, Ex. B-1,at 4.) The Limited Warranty guarantees that each valve will be free from defects under normal use and service for the lesser of two years from the date of purchase or one year from the date it was put into service. The Valve was installed at some point in 2005, although it is not clear during what month. This lawsuit was filed in September 2007, thus, the Limited Warranty was no longer in effect at the time of the incident that forms the basis for this lawsuit. Plaintiff has not met its burden and created an issue of material fact with regard to its express warranty claim. On this issue, NIBCO's Motion must be granted.

### E. Manufacturing Defect

Plaintiff applies the standard for a strict products liability claim. Where the only negligence alleged is conduct relating to whether the product was unreasonably dangerous, a negligent manufacturing claim is subsumed within a products liability claim. *Shaun T. Main Corp. v. Hewlett Packard Co.,* 237 S.W.3d 851, 857 (Tex. App.— Dallas 2007, writ denied).

7

A defendant is liable for a manufacturing defect if it sells any product with a manufacturing defect, where that manufacturing defect deviates from its specifications or planned output in a manner that renders the product unreasonably dangerous to the user or consumer or to his property. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). The defendant is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:

> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Restatement (Second) of Torts* § 402A; *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 378 (Tex. 1984) (applying the Restatement).[4]

For a strict products liability claim, the defendant is held liable based on proof that it placed the product into the stream of commerce and upon further proof that the defective product was a producing cause of the claimant's damages. *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996); *Oasis Oil Corp. v. Koch Refining Co. L.P.*, 60 S.W.3d 248, 253 (Tex.App.—Corpus Christi 2001, writ denied). If a product injures a consumer because it fails to function properly, the consumer does not have to allege or show a violation of a specific duty of care. *O'Neal v. Sherck Equipment Co.*, 751 S.W.2d 559, 562 (Tex.App.-Texarkana 1988, no writ). For a cause to be a producing cause, "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

---

[4] The Restatement is adopted for purposes of products liability claims under maritime law. *See, e.g., Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987) (citing with approval, *Pan Alaska Fisheries Inc. v. Marine Construction and Design Co.*, 565 F.2d 1129, 1134 (9th Cir. 1977), that adopted the Restatement for purposes of admiralty law). *Matthews v. Hyster Co., Inc.*, 854 F.2d 1166, 1168 (9th Cir. 1988).

Although the parties differ in their analyses of the cause of the leak, both Plaintiff's and NIBCO's experts agree that the Valve failed when the taper pin that controls the disc inside the Valve sheared due to excessive torque. (Doc. No. 34, Ex. C, 3; Ex. B ¶ 3.) Further, they agree that the seat/liner of the Valve prevented the disc from moving and caused the taper pin to shear. (Doc. No. 34, Ex. C, 3; Ex. B ¶ 3.)

They disagree about why the nitrile rubber seat/liner prevented the disc from moving. Plaintiff's expert, Dr. Beryl Gamse, opined that the Valve failed because the seat/liner diameter was too small, possibly due to a "manufacturing error or swelling of the material from excessive hydrocarbon absorption." (Doc. No. 34, Ex. C, 3.) Dr. Gamse speculated that these manufacturing errors could have included "(1) improper formulation of the liner material, (2) improper curing of the liner material and/or (3) molding or specification errors that resulted in fabrication of a liner seal with an insufficient diameter for the installed disc." (Doc. No. 39, Ex. F.) In addition, Dr. Gamse notes that the seat/liner was manufactured using the nitrile rubber known as Buna-N, an oil resistant polymer, that should have been resistant to the No. 6 fuel oil/water mixture on the *Clean Marine I*. (Doc. No. 39, Ex. F.) Dr. Gamse opines that a properly manufactured Buna-N seat/liner should not have absorbed hydrocarbons to the point of failure. (Doc. No. 39, Ex. F.) NIBCO's product guide specifies that Buna-N (Nitrile) has good resistance to "solvent, oil, water and hydraulic fluid," but not to "chlorinated hydrocarbons, ozone or nitro hydrocarbons. Some aviation fuels may not be compatible." (NIBCO, Inc., Butterfly Valve Technical Information, NIBCO, Inc., Engineering Data Index, Doc. No. 34-6, at 12.) On the other hand, Defendant's expert, Charlie Stutsman, opined that the likely cause was "swelling of the rubber seat due to excessive hydrocarbons during use." (Doc.

9

No. 34, Ex. B, 1.)  What hydrocarbons were on board is a fact question and neither party

has presented competent evidence to answer this question. Further, NIBCO has not

rebutted Plaintiff's expert's claim that the seat/liner should have been able to withstand

the mixture onboard the barge.

NIBCO contends that, because Plaintiff's expert has not identified a specific

defect or eliminated other potential causes, his opinions are insufficient to avoid

summary judgment. In cases where there are too many possible causes to assume that one

particular defect caused the event, without other proof, evidence of an incident or

accident is insufficient to support a products liability claim. *See Nissan Motor Co., Inc. v.*

*Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) (holding that testimony from lay witnesses

that they also experienced unintended acceleration while driving was insufficient to

support a products liability claim); *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600-

601 (Tex. 2004) (holding that expert testimony that a malfunction of the electrical system

caused the accident, but could not eliminate a defect in the fuel system as a possible

cause was insufficient to raise a fact issue as to a product defect). Both of these cases are

distinguishable. In *Nissan*, the plaintiff relied on lay testimony and could not rule out

other causes. In *Ridgeway*, the expert was unable to make an adequate examination of the

truck and later admitted that he had not yet determined the cause of the fire. *Ridgeway*,

135 S.W.3d at 600. Here, Plaintiff's expert has provided evidence that the defect was  a

poorly manufactured seat/liner. Contrary to NIBCO's contention, construing all facts in

the light most favorable to the non-moving party, Plaintiff's expert has also ruled out

possible misuse by overexposure to hydrocarbons. The question of whether the leak was

caused by some sort of other misuse or a manufacturing defect should properly be decided by a jury.

NIBCO also contends that Plaintiff's circumstantial evidence is insufficient to support its claim. Courts have allowed circumstantial evidence of a product's malfunction to support a strict products liability claim. *See Ford Motor Co. v. Gonzalez*, 9 S.W.3d 195, 199 (Tex.App.—San Antonio 1999, no writ) (allowing this evidence for a two-year old car that the owners purchased new). This evidence, however, is most appropriate when the product is new or almost new. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing with approval cases that find a product installed six to eight years previously do not support an inference of a malfunction, whereas a boat that broke in half after 10 hours did support this inference.) Where a product has been in use for years and adjusted and changed many times, the malfunction by itself is insufficient evidence of a defect. *See Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006).  The evidence must "provide a reasonable basis for concluding the injury would *not* ordinarily have occurred," absent the defect. *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 862-863 (Tex.App.-Dallas 2007, writ denied). Here, the issue is whether the seat/liner was improperly manufactured or improperly used with excessive hydrocarbons, and Plaintiff's evidence is not solely drawn from the malfunction causing the leak. Further, the Valve had been in use for approximately 14 months, within the range of time for which Texas courts have previously allowed circumstantial evidence of a malfunction to suggest a product defect. With the facts in evidence, for example, a reasonable jury could conclude that the seat/liner should have been resistant to the oil-water mixture to which it was exposed, and evidence that it was

swollen because of use with hydrocarbons would reasonably suggest a product defect. Further, the jury could alternatively conclude that the Valve was improperly installed in a high hydrocarbon environment such that misuse caused the failure. Plaintiff has demonstrated a material fact issue as to the first part of the test for a manufacturing defect.

A product is considered unreasonably dangerous where it is "dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41 (Tex. 2007) (overturning the pattern jury instructions for manufacturing defect); *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 477 n. 2 (Tex.App.—Houston [1 Dist.] 2007, n.w.h.). Assuming that the Valve was intended for use in the type of hydrocarbon environment in which Plaintiff used it, a jury could find that the Valve was unreasonably dangerous because it was more likely to cause a costly leak than contemplated by the ordinary user of the product. Further, Plaintiff has established sufficient facts that the Valve's alleged defect was a producing cause of its injuries. Plaintiff has demonstrated an issue of material fact as to this claim.

### F. Breach of the Implied Warranty of Merchantability

In order to sustain a breach of the implied warranty of merchantability the plaintiff must prove that (1) defendant sold or leased a product to the plaintiff; (2) the product was unmerchantable; (3) and the plaintiff suffered injury. TEX. BUS. & COM. CODE ANN. § 2.314 cmt. 13. Goods that are merchantable must at least satisfy the following conditions:

(1) pass without objection in the trade under the contract description; and
(2) in the case of fungible goods, are of fair average quality within the description; and
(3) are fit for the ordinary purposes for which such goods are used; and
(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(5) are adequately contained, packaged, and labeled as the agreement may require; and
(6) conform to the promises or affirmations of fact made on the container or label if any.

TEX. BUS. & COM. CODE ANN. § 2.314(b).

Plaintiff has provided no evidence that the Valve, for example, was not of average quality, adequately packaged, or failed to conform to promises made. Plaintiff, however, has provided evidence that the Valve was not fit for the ordinary purposes for which such goods are sold. Proof of a defect is required to support a claim for a breach of the warranty of merchantability under the "ordinary purposes" prong. *See Plas-Tex, Inc., v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989).[5] Plaintiff's expert opined that the Valve's seat/liner material should have withstood the liquid environment in which it was placed and did not, likely because of a product defect.

The plaintiff also must prove that the defect proximately caused the injury. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667-67 (Tex. 1999). Assuming that the Plaintiff's evidence is correct, that the Valve was defective, then a jury could reasonably find it foreseeable that such a Valve would be installed and would eventually cause damage because of a leak. Consequently, Plaintiff has raised an issue of material fact such that this claim survives Defendant's Motion for Summary Judgment.

---

[5] A claim of warranty for equipment installed during such repairs is not cognizable in admiralty. *See Boson Marine 6, Ltd. v. Crown Point Industries, Inc.*, 854 F.2d 46 (5th Cir. 1988). This claim is therefore analyzed strictly under Texas common law.

## G. Negligent Design

In order to establish a design defect, the plaintiff must prove that (1) there was a safer alternative design; and (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery; (3) the product was defectively designed so as to be unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use. *See Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 257 (Tex. 1999); TEX. CIV. PRAC. & REM. § 82.005. "Safer alternative design" is defined as "a product design other than the one actually used that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

*Id.*

Because it provided no evidence of a safer alternative design, Plaintiff has not established an issue of material fact such that a jury could find Defendant liable on this theory. *See Honda of America Mfg., Inc. v. Norman,* 104 S.W.3d 600, 608 (Tex.App.-Houston [1 Dist.] 2003, writ. denied) (rendering a take-nothing judgment because expert did not advance a safer alternative design.) (Pl. 2nd Am. Compl., Doc. No. 25, at ¶ 17.)

## H. Negligent Marketing

A defendant is liable if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Caterpillar v. Shears,* 911 S.W.2d 379, 382 (Tex. 1995). A plaintiff must show that "(1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of

harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury." *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 116 (Tex.App.—San Antonio 2004, writ denied); *USX Corp. v. Salinas*, 818 S.W.2d 473, 482-83 (Tex.App.—San Antonio 1991, writ denied). The determination of whether a manufacturer has a duty to warn is made when the product leaves the manufacturer. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993). A manufacturer has a duty to warn if it "knows or should have known of potential harm to a user because of the nature of its product." *See General Motors Corp.*, 873 S.W.2d at 356 (quoting *Bristol-Myers Co. v. Gonzalez*, 561 S.W.2d 801, 804 (Tex. 1978)). Plaintiff has provided no evidence of what warnings should have been provided for the Valve or that failure to provide such warning rendered the product unreasonably dangerous. *See Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d at 118; (Pl. 2nd Am. Compl., Doc. No. 25, at ¶17.)

## V. CONCLUSION

The Motion for Summary Judgment filed by NIBCO, Inc. is hereby **GRANTED** as to the negligence, breach of contract, breach of implied warranty of fitness for a particular purpose, breach of express warranty, negligent design, and negligent marketing. The Motion is **DENIED** as to Plaintiff's claim for negligent manufacture/strict products liability and breach of implied warranty of merchantability.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 24th day of November 2008.

15

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**